SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

## State of New Jersey v. Christopher Dekowski (A-35-12) (071019)

**[Note: This is a companion case to State v. Kelvin Williams, also filed today.]**

**Argued October 8, 2013 -- Decided August 11, 2014**

**ALBIN, J., writing for a unanimous Court.**

In this appeal, as in its companion case decided today, State v. Williams, ___ N.J. ___ (2014), the Court determines whether, in the course of committing a robbery, a defendant's claim that he had a bomb constituted sufficient evidence to support a jury finding that defendant was armed with or threatened the immediate use of a deadly weapon.

On the morning of September 27, 2007, defendant Christopher Dekowski entered the Commerce Bank in Roselle, New Jersey, wearing a long-sleeve shirt, jeans, boots, a baseball cap with the brim partially covering his face, and sunglasses, and carrying a bag that resembled a briefcase. Defendant's clothing and suspicious behavior, including pacing the floors and playing with the locks on the bottom of the bank's front doors, attracted the attention of several employees. Bank manager Anne Beeman instructed a customer service representative to call the police if she coughed. When she saw defendant pass a note to one of the tellers, Beeman signaled the representative and took over the transaction. The note requested money in various denominations and stated that defendant had a bomb in the bag. Beeman admitted she had no way of knowing whether defendant really had a bomb, but she believed it was possible. Concerned and fearful for herself, her employees and the customers, Beeman attempted to delay the transaction until defendant yelled at her to give him the money. She gave him about $500, and he left the bank. An employee took down his license plate number, which led police to defendant's parents' house, where they arrested him later that day.

At the end of the State's case, defendant moved to dismiss the first-degree portion of the robbery charge. The trial court denied the motion. Despite defendant's testimony that he was suffering from a drug-induced blackout during the robbery, the jury convicted him of first-degree robbery and he was sentenced to a thirteen-year prison term, subject to an eighty-five percent period of parole ineligibility.

Defendant appealed, and the Appellate Division reversed his conviction on the ground that there was insufficient evidence to support a finding that defendant was armed with a real or simulated deadly weapon. The panel molded the jury verdict to reflect a second-degree robbery conviction. It maintained that, although the manager read the note stating that defendant had a bomb, defendant did not claim that the briefcase contained a weapon, nor did he brandish it or make any gesture toward it. Moreover, none of the witnesses expressed a belief that defendant had a bomb in the briefcase or that he in any way led them to believed it contained a bomb. Thus, the panel concluded that the State failed to prove a connection between the briefcase and the bomb threat. The Court granted the State's petition for certification. 212 N.J. 462 (2012).

**HELD:** Applying a totality-of-the-circumstances standard, defendant's appearance, conduct, and written note demanding money and threatening a bomb in a bag provided sufficient evidence for a reasonable jury to convict defendant of first-degree robbery based on a finding that the bank manager had an actual and reasonable belief that defendant was armed with a deadly weapon.

1. In accordance with N.J.S.A. 2C:15-1(b), second-degree robbery is elevated to first-degree robbery in cases where, while committing a theft, the defendant "is armed with, or uses or threatens the immediate use of a deadly weapon." In this appeal's companion case, Williams, supra, ___ N.J. at ___, the Court considered the "deadly weapon" provision of the robbery statute in the context of a threatened simulated bomb, applying a totality-of-the-circumstances standard to determine whether sufficient evidence was presented to the jury to conclude that the

1

victim actually and reasonably believed that the robber possessed a bomb. A first-degree robbery conviction will not be sustained unless, under the circumstances, the victim possessed a reasonable and subjective belief that the device, instrument, material or substance possessed by the robber was capable of producing death or serious bodily injury. In the case of simulated weapons, to determine the reasonableness of the victim's belief, factfinders must look to the totality of the circumstances, including the defendant's words conveying the threat, his overall conduct, his dress, and any other relevant factors. (pp. 11-13)

2. One relevant factor to consider in applying the totality-of-the-circumstances standard is whether the robber was carrying an object while threatening a bomb. The public is well aware that bombs have been concealed under clothing, as well as in backpacks, luggage, bags, and attaché cases. The range of instruments that robbers have fashioned as fake bombs is similarly broad, including shoeboxes with lights and sticks with wiring. In light of recent events and the common knowledge that a bomb has a devastating destructive capacity, a credible bomb threat will engender fear or even panic. Consequently, a victim threatened with the detonation of a bomb is unlikely to ask for proof of its existence, and a robber making such a threat should expect to be taken at his word. Thus, where a robber has made an unambiguous oral or written threat, a gesture, such as patting a briefcase or waving it in the air, is not necessary in order for a victim to form a reasonable belief that the robber is carrying a bomb. (pp. 13-15)

3. Here, the Court reviews the record de novo to determine whether the State presented sufficient evidence to defeat defendant's acquittal motion. On entering the bank, defendant's appearance and conduct almost immediately engendered suspicion. The note he subsequently handed to the teller conveyed a robbery in action and the threat of a bomb, and Beeman testified that she believed defendant may have been armed with a bomb. Giving the State the benefit of all favorable inferences and applying a totality-of-the-circumstances standard, the evidence supports the conclusion that a reasonable jury could find that Beeman had an actual and reasonable belief that defendant was armed with a deadly weapon. Accordingly, the Court reverses the judgment of the Appellate Division and reinstates defendant's conviction for first-degree robbery. It remands to the Appellate Division for consideration of defendant's claim that his sentence is excessive. (pp. 15-19)

The judgment of the Appellate Division is **REVERSED** and the matter is **REMANDED** to the Appellate Division for further proceedings in accordance with the Court's opinion.

**CHIEF JUSTICE RABNER, JUSTICES LaVECCHIA and PATTERSON, and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE ALBIN's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

CHRISTOPHER DEKOWSKI,

    Defendant-Respondent.


       Argued October 8, 2013 – Decided August 11, 2014

       On certification to the Superior Court, Appellate Division.

       Meghan V. Tomlinson, Assistant Prosecutor, argued the cause for appellant (Grace H. Park, Acting Union County Prosecutor, attorney).

       Rochelle M.A. Watson, Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney).

       Kenneth A. Burden, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (John J. Hoffman, Acting Attorney General, attorney).


    JUSTICE ALBIN delivered the opinion of the Court.

    In State v. Williams, we affirmed the defendant's conviction of first-degree robbery for threatening a bank teller with a deadly weapon in the course of committing a theft. ___ N.J. ___, ___ (2014) (slip op. at 1-3). The defendant in

1

Williams threatened that he was armed with a bomb, an act that elevated the offense from second-degree robbery to first-degree robbery. Ibid. Although by all appearances the defendant in Williams could have had a bomb concealed on his person, in fact he had no such weapon -- he had merely simulated that he possessed a bomb. Id. at ___ (slip op. at 2). We held that to find the defendant guilty of first-degree robbery in a simulated deadly weapon case, the victim must have an actual and reasonable belief that the defendant threatened the immediate use of such a weapon. Id. at ___ (slip op. at 3). In determining whether the victim possessed an actual and reasonable belief that the defendant threatened the use of a deadly weapon, such as a bomb, the factfinder must consider the totality of the circumstances, including the nature of any verbal threat, the defendant's overall conduct, his dress, and any other relevant factors. Ibid.

In the present case, defendant Christopher Dekowski entered a bank carrying what looked like a briefcase, went to a teller's counter, and with the use of a note demanded money and threatened that he had a bomb. The frightened bank manager, who was behind the teller's counter, did as she was told and gave defendant cash. A jury convicted defendant of first-degree robbery.

The Appellate Division overturned the first-degree conviction, finding the evidence insufficient to prove that defendant simulated possession of a deadly weapon.  In rendering that decision, the panel referred to the failure of the State's witnesses to express in their testimony that "they believed defendant had a bomb in the briefcase, or that he led them to believe that it contained a bomb, or even that it was shaped in such a way that it was likely to hold a bomb."  The panel concluded that the evidence instead established second-degree robbery and remanded for resentencing.

We now reverse.  As we stated in Williams, supra, the public is well aware that bombs can be secreted under a person's clothes and in other ways, and detonated by various means.  ___ N.J. at ___ (slip op. at 2).  A terrorized victim cannot be expected to demand proof from the robber that he is armed with a deadly weapon, such as a bomb.  Id. at ___ (slip op. at 21).  It is enough if the victim has an actual and reasonable belief that the robber has a bomb based on the totality of the circumstances, including defendant's verbal threat, dress, any hand-held objects, and overall conduct.  See id. at ___ (slip op. at 22).  By this standard, the jury had sufficient evidence to return a verdict of first-degree robbery.  We therefore reinstate defendant's conviction for that offense.

I.

A.

Defendant, Christopher Dekowski, was tried by a jury and found guilty of first-degree robbery. The evidence presented at trial that is relevant to this appeal follows.

At about 10:30 a.m. on September 27, 2007, defendant entered the Commerce Bank in the Borough of Roselle in Union County. Defendant was wearing a long-sleeve shirt and jeans, boots, a baseball cap with the brim partially covering his face, and sunglasses. He also carried something resembling a briefcase or a case that could hold a computer. He attracted the attention of several bank employees because of his suspicious appearance and conduct. Most customers, unlike defendant, were wearing short-sleeve shirts. Defendant also was observed possibly playing with locks on the bottom of the bank's front doors. In the bank's lobby, defendant paced back and forth, appeared nervous and fidgety, and could not stand still.

According to the bank manager, Anne Beeman, defendant did not "look right." Beeman told a customer service representative that she was going behind the teller's stations and to call the police if she coughed. Beeman also asked another employee to write down a description of defendant. Beeman positioned herself behind the teller's counter as defendant stood on the line leading to teller Lucy Gonzalez. When she saw defendant

4

pass a note to Gonzalez, Beeman went to the counter, told the teller that she would handle the transaction, and gave the cough signal.

Defendant then told Beeman to read a note on a piece of yellow-lined paper. Beeman recalled the note having words to the effect "that he wanted 100's, 50's, and 20's, and that he had a bomb, and not to do anything." The actual note, later found shredded in defendant's house and pieced together, read in relevant part:

> I Know who you Are
> Where you leave
> put All the money In
> A bag I set up bomb's I
> the bag so do not do Anything
>     20, 10 100 50
> Stupid

Beeman testified that she "got very concerned for the customers," her "employees," and herself "in case he did really have a bomb." She had "no way of knowing if he did or did not." She was in fear for her safety and knew that if defendant had a bomb "there were a lot of people that would get hurt." Although she saw no weapons, Beeman believed that defendant was possibly carrying a bomb.

Beeman attempted to delay "the transaction a little bit," but defendant "yelled at [her] to give him the money." She asked him if she could give him some "10's" out of the teller drawer, in addition to other denominations, and "[h]e said that

5

was okay." Beeman placed a little more than $500 in an envelope and handed it to defendant. He then took the envelope and the note and left the bank.

When defendant approached his car and retrieved his keys from a pants pocket, a note fell to the ground. Defendant then entered the car and drove off. The note that fell from defendant's pocket was later recovered. It read:

```
I Know where you
leave when you
leave.  So put
All the money
In A bag do Not
put Any funny
cash with It
my Brief Case
Has A 9mm
```

A bank employee recorded the car's license plate number, which led the police to defendant's parents' house that day. There, police officers arrested and searched defendant. A large sum of money and a prescription bottle of Xanax were found on defendant. After defendant's parents consented to a search of the house, the police found evidence linking defendant to the robbery. Defendant also gave the police an incriminating statement.

At the end of the State's case, defendant moved to dismiss the first-degree portion of the robbery charge. The trial court denied the motion.

Defendant presented a diminished-capacity and intoxication defense. Defendant testified that he took an excess of methadone and Xanax on the morning of the robbery. He contended that he was suffering from a drug-induced blackout when he entered the Commerce Bank. He claimed to have no recollection of any of the events, including making preparations for a robbery or giving an incriminating statement to the police.

Dr. Mark Seglin, a psychologist, testified for defendant. Dr. Seglin diagnosed defendant as suffering from bipolar disorder and polysubstance abuse. Dr. Seglin, however, did not express an opinion whether defendant possessed the mens rea required to commit the crime. In rebuttal, the State called Dr. Louis Schlesinger, a forensic psychologist. Dr. Schlesinger diagnosed defendant with polysubstance abuse and several psychological disorders. In Dr. Schlesinger's opinion, defendant's substance abuse and psychological disorders did not impair defendant's ability to form the intent necessary to commit the offense.

B.

After the jury found defendant guilty of first-degree robbery, the trial court sentenced defendant to a thirteen-year prison term, subject to an eighty-five-percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A.

7

2C:43-7.2. The court also imposed requisite fines and penalties.[1]

Defendant appealed.

## II.

The Appellate Division in an unpublished opinion reversed defendant's first-degree robbery conviction on the ground that there was insufficient evidence to support a finding that defendant was armed with a real or simulated deadly weapon. The panel molded the jury verdict to reflect a second-degree robbery conviction.[2]

The panel maintained that only the bank manager read the note "demanding money and stating that [defendant] had a bomb." It emphasized that "[d]efendant did not state or indicate that the briefcase contained a weapon," nor did defendant "brandish [the briefcase] or make any gesture toward it." In addition, according to the panel, none of the witnesses gave testimony either expressing a belief that "defendant had a bomb in the

---

[1] The court did not impose the five-year period of parole supervision mandated by N.J.S.A. 2C:43-7.2(c) ("[A] court imposing a minimum period of parole ineligibility of 85 percent of the sentence pursuant to [N.J.S.A. 2C:43-7.2] shall also impose a five-year term of parole supervision if the defendant is being sentenced for a crime of the first degree . . . .").

[2] The Appellate Division remanded for resentencing on second-degree robbery.

briefcase" or suggesting that defendant "led them to believe that it contained a bomb." In the panel's view, the State failed "to prove a connection between the briefcase and the bomb threat" and focused entirely "on the evidence that defendant made a threat that he had a deadly weapon and his threat caused Beeman to be afraid."[3]

We granted the State's petition for certification. State v. Dekowski, 212 N.J. 462 (2012). We granted the Attorney General's motion for leave to appear as amicus curiae.

### III.

### A.

The sole issue before the Court is whether the State presented sufficient evidence to support a jury finding that defendant was armed with or threatened the immediate use of a deadly weapon in the course of committing a theft. N.J.S.A. 2C:15-1(a)(2), (b).

The State argues that there was "ample evidence that . . . defendant created the reasonable impression that he was concealing a bomb," thus satisfying the statutory requirement of deadly weapon. The State highlights that defendant was carrying

---

[3] Because the panel vacated the first-degree portion of the conviction, it did not address defendant's claim that his sentence was excessive.

9

a briefcase or portfolio that could have contained a bomb, that defendant handed the bank manager a note in which he demanded money and stated that he had a bomb, and that the bank manager was fearful "for her safety and the safety of everyone inside the bank." The State maintains that "[t]here is no special formula of words and gestures which must be combined" in a case involving the simulation of a deadly weapon.

The Attorney General, as amicus curiae, submits that "[w]hile a victim must believe that defendant is armed with a deadly weapon, that belief need only be reasonable under the totality of the circumstances." The Attorney General insists that, under the totality-of-the-circumstances standard, defendant created the reasonable impression that he was armed with a bomb by his demand for money, by his "unambiguous bomb threat," and by his possession of a briefcase to substantiate that threat.

Defendant urges that we affirm the Appellate Division's reversal of the first-degree robbery conviction. Defendant contends that "requiring the victim's subjective belief that a weapon is present is consistent with the ostensible policy of treating a simulated weapon like a real weapon." He adds that "[i]f the victim only believes that there could be a weapon, then the defendant has not created the sort of danger present in an armed robbery." In this case, defendant states that the bank

manager's "complete uncertainty about the presence of a weapon falls short of" the statutory definition of deadly weapon. Defendant argues that he did not hold the "portfolio" in a way to suggest that he was carrying a bomb and that the bank manager did not connect the threat conveyed in the note to the portfolio.  Defendant submits that a first-degree robbery conviction cannot be sustained in the absence of testimony that either a victim believed that the briefcase contained a bomb or that defendant led them to believe a bomb was concealed there.

IV.

In Williams, supra, we construed the "deadly weapon" provision of the robbery statute, N.J.S.A. 2C:15-1(b), in a case in which the "deadly weapon" was a simulated bomb.  ___ N.J. at ___ (slip op. at 1-3).  There, we applied a totality-of-the-circumstances standard for determining whether sufficient evidence was presented to the jury to conclude that the victim actually and reasonably believed that the robber possessed a bomb.  Id. at ___ (slip op. at 24-26).  Before turning to the principles we enunciated in Williams, we begin with the relevant statutes.

A defendant commits second-degree robbery "if, in the course of committing a theft, he . . . [t]hreatens another with or purposely puts him in fear of immediate bodily injury."

11

N.J.S.A. 2C:15-1(a)(2), (b).  Second-degree robbery is elevated to a first-degree crime "if in the course of committing the theft the [defendant] . . . is armed with, or uses or threatens the immediate use of a deadly weapon."  N.J.S.A. 2C:15-1(b).

Here, as in Williams, the definition of deadly weapon is the critical factor.  "Deadly weapon" is defined as

> any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury or which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury.
>
> [N.J.S.A. 2C:11-1(c) (emphasis added).]

In Williams, supra, we reaffirmed that "a first-degree robbery conviction will not be sustained unless the victim possessed 'a subjective belief that the device or instrument [or material or substance was] "capable of producing death or serious bodily injury," and . . . that that subjective belief [was] a reasonable one under the circumstances.'"  ___ N.J. at ___ (slip op. at 14-15) (alterations in original) (quoting State v. Hutson, 107 N.J. 222, 227-28 (1987)).  We also noted that "[t]he language covering simulated weapons in N.J.S.A. 2C:11-1(c) is broad enough to encompass the multitude of ways in which a 'device, instrument, material or substance' can be fashioned by a creative robber into something that generates a reasonable

12

belief that it is or conceals a lethal weapon." Id. at ___ (slip op. at 15).

We found that the thread running through our case law on robberies with simulated weapons is that courts "must look to the totality of the circumstances to determine whether the victim reasonably believed that the defendant was armed with a deadly weapon." Id. at ___ (slip op. at 19). A totality-of-the-circumstances analysis requires that a court "consider the defendant's words that convey the threat, his overall conduct, his dress, and any other relevant factors." Id. at ___ (slip op. at 22). One relevant factor -- not touched on in Williams -- is whether the robber is carrying an object when threatening a bomb in the course of committing a theft.

As we pointed out in Williams, the public is well aware that bombs have been concealed under clothes and in garments. Id. at ___ (slip op. at 2). The public is also aware that bombs have been hidden in backpacks, luggage, bags, and attaché cases. See, e.g., United States v. Rankin, 487 F.3d 229, 230 (5th Cir. 2007) (describing briefcase bomb); In re Air Disaster at Lockerbie Scot., 37 F.3d 804, 811 (2d Cir. 1994) (describing destruction of Pan Am 103 by bomb hidden in luggage in cargo hold), cert. denied, 513 U.S. 1126, 115 S. Ct. 934, 130 L. Ed. 2d 880 (1995); United States v. Arocena, 778 F.2d 943, 946 (2d Cir. 1985) ("high-level explosive in a briefcase" exploded at

13

airport on baggage cart), cert. denied, 475 U.S. 1053, 106 S. Ct. 1281, 89 L. Ed. 2d 588 (1986); In re Trials of Pending & Future Criminal Cases, 306 F. Supp. 333, 337 (N.D. Ill. 1969) (noting bombings on government property, including bombing with briefcase containing dynamite); Richard A. Oppel Jr. & Jess Bidgood, Marathon Bombing Suspect, in First Court Appearance, Pleads Not Guilty, N.Y. Times, July 11, 2013, at A11 (describing 2013 Boston Marathon bombing in which bombs were secreted and detonated in backpacks). Anyone passing through a security checkpoint in an airport is reminded of the threat posed by bombs that may be hidden in bags and luggage.

The range of instruments that robbers have fashioned as bombs -- although fake -- is similarly broad. See, e.g., United States v. Beck, 496 F.3d 876, 877 (8th Cir. 2007) (cardboard box, briefcase, and note stating, "I have a bomb"); United States v. Rodriguez, 301 F.3d 666, 667 (6th Cir. 2002) (styrofoam sandwich box); United States v. Hart, 226 F.3d 602, 603-04 (7th Cir. 2000) (lunch box and bags containing shoeboxes); United States v. Zamora, 222 F.3d 756, 760 (10th Cir.) (gift-wrapped package), cert. denied, 531 U.S. 1043, 121 S. Ct. 641, 148 L. Ed. 2d 547 (2000); United States v. Beckett, 208 F.3d 140, 143-44 (3d Cir. 2000) (gift-wrapped shoebox and box with antenna and lighted button); United States v. Miller, 206 F.3d 1051, 1052 (11th Cir. 2000) (red sticks with lit fuse);

14

Paese v. United States, 927 F. Supp. 667, 668 (S.D.N.Y. 1996) (attaché case with "three purple sticks and a transistor with wiring").

In light of recent events and contemporary history, a credible bomb threat will engender fear or terror, and even panic, because of a bomb's known devastating destructive capacity. As we have said, "[a] victim threatened with the immediate detonation of a bomb is not likely to ask for proof of its existence," and therefore "[a] robber who claims he is armed with a bomb . . . should expect that he will be taken at his word." Williams, supra, ___ N.J. at ___ (slip op. at 21). A robber does not have to give a superfluous gesture, such as patting a briefcase or wildly waving it in the air, for a victim to form a reasonable belief -- based on an unambiguous oral or written threat -- that a robber is carrying a bomb. See id. at ___ (slip op. at 21).

We now apply the totality-of-the-circumstances standard to determine whether there was sufficient evidence for the jury to find that the bank manager had an actual and reasonable belief that defendant was armed with a bomb.

V.

At the close of the State's case, defendant moved for a judgment of acquittal on the charge of first-degree robbery.

15

See R. 3:18-1.  We review the record de novo in assessing whether the State presented sufficient evidence to defeat an acquittal motion.  See State v. Bunch, 180 N.J. 534, 548-49 (2004); Pressler & Verniero, Current N.J. Court Rules, comment 5 on R. 3:18-1 (2014).  "We must determine whether, based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt."  Williams, supra, ___ N.J. at ___ (slip op. at 23) (citing State v. Reyes, 50 N.J. 454, 458-59 (1967)).  Presented in that light, here are the facts.

When defendant entered the Commerce Bank, he almost immediately engendered suspicion.  He was wearing a long-sleeve shirt on a day that other customers were wearing short-sleeve shirts; he positioned his baseball cap partially covering his face and was sporting sunglasses; he was carrying something resembling a briefcase; and, at one point, he appeared to be playing with the locks on the bottom of the bank's front doors.  In the bank's lobby, defendant looked agitated and paced back and forth, and, according to the bank manager, Anne Beeman, he did not "look right."  Beeman was sufficiently alarmed that she asked one of her employees to take down a written description of defendant and to call the police if she coughed.

16

When defendant arrived at the teller's counter and passed the teller a note, Beeman intervened and said she would handle the transaction. The note, with all its grammatical flaws, conveyed a robbery in action and the threat of a bomb. The note read in part, "put All the money In A bag I set up bomb's I the bag so do not do Anything Stupid." The note listed denominations of "20, 10 100 50." Although Beeman did not see a bomb, she testified that she did not doubt that defendant might be carrying one. As she said, she had "no way of knowing if he did or did not." But she was in fear for her safety and for the safety of her employees and customers. After defendant yelled "to give him the money," she did not question that the bomb threat was credible. Rather, she handed defendant an envelope with more than $500.

Giving the State the benefit of the favorable inferences drawn from the testimony, the State was entitled to have the case submitted to the jury. Because a simulated bomb will often be concealed, the victim need not be certain that a robber is armed with such a weapon. "That the victim believes that the robber may be armed with a deadly weapon is sufficient to satisfy the actual-belief requirement. That subjective belief, however, must also be reasonable under the circumstances." Williams, supra, ___ N.J. at ___ (slip op. at 22) (citing Hutson, supra, 107 N.J. at 227-28). With that in mind, the

17

favorable inferences support the conclusion that Beeman had an actual and reasonable belief that defendant was armed with a bomb.

The Appellate Division was simply mistaken in stating that "[d]efendant did not state or indicate that the briefcase contained a weapon." The note proves otherwise. Moreover, some theatrical gesture or movement is not a requirement for a victim to entertain a reasonable belief that a robber is carrying a bomb. Defendant here said he had a bomb and had in hand a briefcase that could carry one. Beeman was not required to engage in a potentially dangerous colloquy with the robber to satisfy herself that he, in fact, was armed with a bomb.

Judged by the totality of the circumstances, including defendant's suspicious dress, alarming conduct, and the written note demanding money and threatening a bomb in a bag, a reasonable jury could find that Beeman had an actual and reasonable belief that defendant, in the course of a robbery, was armed with a deadly weapon.

### VI.

For the reasons expressed, we reverse the judgment of the Appellate Division and reinstate defendant's conviction for first-degree robbery. We remand to the Appellate Division for consideration of defendant's remaining appellate issue -- a

18

claim that his sentence is excessive. Defendant's judgment of conviction must also be amended to reflect the imposition of a five-year term of parole supervision on his release from prison, as mandated by N.J.S.A. 2C:43-7.2(c).

CHIEF JUSTICE RABNER, JUSTICES LaVECCHIA and PATTERSON, and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE ALBIN's opinion.

SUPREME COURT OF NEW JERSEY

NO. __A-35___ SEPTEMBER TERM 2012

ON CERTIFICATION TO _____Appellate Division, Superior Court_____

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

         v.

CHRISTOPHER DEKOWSKI,

     Defendant-Respondent.

DECIDED _____August 11, 2014_____
        Chief Justice Rabner       PRESIDING

OPINION BY _____Justice Albin_____

CONCURRING/DISSENTING OPINIONS BY _____

DISSENTING OPINION BY _____

| CHECKLIST | REVERSE/ REINSTATE/ REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |