**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1485-15T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAIME H. FERNANDEZ,

    Defendant-Appellant.

_____

Submitted May 10, 2017 — Decided July 18, 2017

Before Judges Alvarez and Manahan.

On appeal from the Superior Court of New
Jersey, Law Division, Morris County,
Indictment No. 14-04-0388.

Joseph E. Krakora, Public Defender, attorney
for appellant (Louis H. Miron, Designated
Counsel, on the brief).

Fredric M. Knapp, Morris County Prosecutor,
attorney for respondent (Paula Jordao,
Assistant Prosecutor, on the brief).

PER CURIAM

    Tried by a jury, defendant Jaime H. Fernandez was convicted

of third-degree resisting arrest, N.J.S.A. 2C:29-2a(3)(a), and

acquitted of third-degree aggravated assault on a law enforcement

official, N.J.S.A. 2C:12-1b(5)(a). On May 21, 2015, he was sentenced to two years' probation, 180 days of county jail time, and appropriate fines, penalties, and assessments. He appeals and we affirm.

At the trial, two Mount Olive Township police officers testified on behalf of the State. Sergeant Anthony Annecchiarico testified that he drove to defendant's residence to serve him with a temporary restraining order issued under the Domestic Violence Act. See N.J.S.A. 2C:25-17 to -35. The order required defendant to turn over the parties' seven-year-old son to his former wife. Patrolman Anthony Hering accompanied Annecchiarico.

When the two officers arrived at defendant's home at approximately 5:45, defendant's girlfriend and the child were at the home, but defendant was not. Defendant's girlfriend spoke with the officers and told them she would need to speak with defendant before she would agree to turn the child over. She called defendant, and he told her he was on his way home. Annecchiarico overheard "yelling from the other end of the phone" during their conversation.

Annecchiarico returned to his patrol car to await defendant's arrival. He saw defendant park next to Hering's vehicle. As Annecchiarico left his patrol car, he heard defendant yelling. He saw defendant crossing toward Hering with his hands clenched while

moving his arms, screaming at Hering. Defendant lifted his shirt and yelled "I don't have no gun, you're gonna have to shoot me, m----- f-----." Annecchiarico told him that "nobody has to die, relax, calm down[,]" but had to use pepper spray to attempt to subdue defendant while Hering took him to the ground. Once defendant was on the ground, Annecchiarico was able to handcuff one arm, but defendant struggled to keep his other arm from being restrained. Annecchiarico called for an ambulance once he saw that defendant had been injured during the altercation.

Hering, who had been present when defendant's girlfriend called him, also heard "a lot of yelling" over the phone. After waiting in his patrol car some ten to fifteen minutes, he saw defendant drive into the parking lot, heading towards him. He said that defendant "[a]lmost struck my patrol vehicle and parked next to me on my right side . . . [l]ess than a door length" away.

Defendant left his truck while screaming "f---, f---." Defendant charged at Hering yelling "no, no," and "you're not going to take my kid you m----- f-----." Hering said defendant was enraged, his eyes "bulging out of his head," and his face bright red. Defendant had a set of keys in his right fist wedged between his fingers. Hering was afraid that defendant was going to kill him.

Hering ordered defendant to take a step back and defendant repeated, "you're not going to take my kid, you m----- f-----. You're gonna have to kill me to take my son." Hering attempted to grab defendant's arm to place him in a compliance hold, and defendant ignored his commands. He ripped his arm out of Hering's grasp, yelled "don't touch me," and went towards the back of his pickup truck, "beating his chest" and yelling "kill me, kill me."

When Annecchiarico ran over to assist Hering, defendant yelled "I ain't got no guns you m----- f-----[.]" Hering tried to sweep defendant's leg to get him to the ground, but it was not until he grabbed defendant's shoulders that he succeeded in doing so. Defendant continued to struggle once on the ground. Hering was injured as a result of the struggle, scraping his hands. Neither officer told defendant that he was under arrest.

The video played for the jury from Annecchiarico's patrol car opens with defendant screaming foul expletives, and Annecchiarico telling him to "relax, stop yelling." On the tape, defendant is heard to yell "[g]et off me, I don't have no gun, I don't have no gun, you'll have to kill me, m----- f-----." The officers can be heard telling defendant to relax, while an unidentified female voice can be heard saying "Jaime, stop, stop."

Defendant's girlfriend testified that when she arrived at the parking lot she saw the police hitting defendant, and that Hering

punched him two or three times in the face. Defendant's girlfriend also claimed that the officers were kneeling on him, rubbing his face on the ground, and that he had blood all over his face. When she told the officers to stop, she said one of them pushed her away. She saw defendant leave in an ambulance.

After the State rested its case, defendant moved for acquittal on both charges. He argued that in order to resist arrest, a person has to be under arrest, and that at the time of the incident, defendant was not under arrest for anything. The judge denied the motion, holding that given the State's proofs, a reasonable jury could readily find defendant guilty.

During the charge conference, the judge read the proposed jury instructions to the attorneys, and asked if they had any objections. The judge agreed with the modifications defense counsel suggested. Defense counsel also briefly raised the issue of the "justification" defense to resisting arrest, but added "I'm not suggesting that you charge justification. And the reason why I say that is because I think Your Honor's correct that the defendant has to testify in order to allow that request." Immediately after the judge charged the jury, he asked counsel at sidebar if they had any comments or request for additional charges. They did not.

During Hering's cross-examination, the judge instructed the jury as follows:

>     Ladies and gentlemen, I just want to clarify something for you, okay. If the arrest is a legal arrest, the police do not need to announce it, okay. The facts must simply show that the defendant knew he was being arrested and he nevertheless resisted.

>     Now, in contrast, if the arrest if an unlawful arrest, then the officer has to announce his intention to arrest, all right. Unless of course the officer was acting under color of official authority, okay.

>     Now, I don't expect you to remember that right now. In other words, if it's a lawful arrest, then they don't have to announce it. But the facts would have to simply indicate that the defendant knew he was being . . . arrested and he nevertheless resisted.

>     That's a factual determination that you would make, okay.

>     If you should determine that it was an unlawful arrest, all right, the officer would have to announce the intention to arrest the defendant before he resisted, unless the officer was acting under color of official authority.

>     All right? So if it's an unlawful arrest and you find it, it's an unlawful arrest, he has to announce his intention to arrest.

>     Now that you may not be clear, but it's now 20 minutes to four and I'm going to charge you, do you follow me, at the appropriate time. If you want, when you come out here tomorrow morning, if you want me to go over that again, I will go over it again, all right.

6

The following morning, immediately after the jury entered the courtroom, the judge instructed as follows:

> All right. Good morning, ladies and gentlemen. I see that you're all here. Before we continue with the cross examination of the witness I don't believe that I misspoke yesterday, but I want to make sure that I didn't with respect to, I'll call it, the announcement issue, okay? Again, I don't think I did. The attorneys don't think I did. But I'm going to ask you to disregard what I said and I will instruct you once again, okay?
>
> If the arrest is legal the police do not need to announce it. The facts must simply show that the defendant knew he was being arrested and he, nevertheless, resisted. The lack of an announcement that the defendant was being placed under arrest, however, could be considered by you if you choose to do so in evaluating or determining defendant's guilt.
>
> It is a factor you can consider along with all other factors in the sequence of the events.
>
> Now, if you should find that the arrest was unlawful the officer or one of them acting under color of official authority would have to announce the intention to arrest before the defendant resist. Okay?
>
> Anybody want me to repeat it again, raise your hand and I will. No one's raised their hand. All right, let's continue.

During his final charge, the judge gave the jury the Model Jury Charge instruction on resisting arrest, including the distinction between lawful and unlawful arrest:

7                                        A-1485-15T2

The first element the State must prove beyond a reasonable doubt is that Hering was a law enforcement officer.

A law enforcement officer is a person whose public duties include the power to act as an officer for the detention, detection, apprehension, arrest and conviction of offenders against the laws of this state.

The second element that the State must prove beyond a reasonable doubt is that Hering was effecting an arrest.

It is not a defense to prosecution under this subsection that the law enforcement officer was acting unlawfully in making the arrest provided he was acting under color of his official authority. And provided the officer announces his intention to arrest prior to the resistance.

On appeal, defendant raises the following points for our consideration:

I.   THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING FERNANDEZ'S MOTION FOR ACQUITTAL AT THE CONCLUSION OF THE STATE'S CASE WITH RESPECT TO THE RESISTING ARREST COUNT BECAUSE THE STATE'S EVIDENCE WAS INSUFFICIENT TO PROVE FERNANDEZ GUILTY OF THE CHARGE BEYOND A REASONABLE DOUBT.

II.   THE TRIAL COURT'S JURY CHARGE REGARDING RESISTING ARREST WAS MISLEADING, AMBIGUOUS AND FATALLY DEFECTIVE BECAUSE IT FAILED TO DISTINGUISH CLEARLY THE POLICE OFFICER'S OBLIGATIONS AND DEFENDANT'S RESPONSE THERETO IN THE CONTEXT OF A LEGAL ARREST AND IN THE CONTEXT OF AN ILLEGAL ARREST.

### III. THE TRIAL COURT SHOULD HAVE INSTRUCTED THE JURY CONCERNING THE JUSTIFICATION DEFENSE TO THE RESISTING ARREST CHARGE.

### I.

We review de novo a claim that a trial court erred in denying a motion for acquittal on the basis of insufficiency of the evidence. State v. Dekowski, 218 N.J. 596, 608 (2014). We apply the same standard as the trial court, asking: "whether, based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt." Ibid. (quoting State v. Williams, 218 N.J. 576, 594 (2012)).

If a party did not object at trial to the jury instructions, they are reviewed for plain error and reversed only if "such an error was 'clearly capable of producing an unjust result.'" State v. Miller, 205 N.J. 109, 126-127 (2011) (quoting R. 2:10-2). Appellate review of a jury instruction requires "not only scrutiny of the charge itself, but an inquiry as to whether an erroneous charge may have affected the trial's result." Washington v. Perez, 219 N.J. 338, 351 (2014). Erroneous jury instructions are not reversed if "incapable of producing an unjust result or prejudicing substantial rights." Ibid. (quoting Mandal v. Port Auth. of N.Y. & N.J., 430 N.J. Super. 287, 296 (App. Div.) certif. denied, 216

N.J. 4 (2013)). However, "where the jury outcome might have been different had the jury been instructed correctly," erroneous jury instructions constitute reversible error. Ibid. (quoting Velazquez v. Portadin, 163 N.J. 677, 688 (2000)).

II.

Defendant contends that his motion for acquittal on the resisting arrest charge should have been granted as the State's evidence was insufficient to prove guilt beyond a reasonable doubt. The statute makes an actor guilty of resisting arrest if "he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest," and either "[u]ses or threatens to use physical force or violence against the law enforcement officer or another; or [u]ses any other means to create a substantial risk of physical injury to the public servant or another."

Resisting arrest "requires a culpability of purpose." State v. Branch, 301 N.J. Super. 307, 321 (App. Div. 1997). A defendant therefore must be aware that police are attempting to effectuate an arrest to be guilty of resisting it. Ibid. However, if an arrest is lawful, a police officer's failure to announce that defendant is under arrest does not warrant an acquittal on its own. Ibid. It is merely "one factor to be considered in the overall sequence of events leading to the arrest." Ibid. If a reasonable jury could find that, based on the circumstances,

defendant knew police were attempting to make an arrest, and defendant resisted that arrest, there is sufficient evidence to uphold a conviction. Ibid.

Regarding an unlawful arrest, N.J.S.A. 2C:29-2 specifically provides that "[i]t is not a defense to a prosecution under this subsection that the law enforcement officer was acting unlawfully in making the arrest, provided he was acting under color of his official authority and provided the law enforcement officer announces his intention to arrest prior to the resistance." (Emphasis added). Thus, if the State failed to prove that police had announced their intention to arrest defendant before his resistance, he could not be convicted of resisting an unlawful arrest pursuant to N.J.S.A. 2C:29-2. State v. Kane, 303 N.J. Super. 167, 182 (App. Div. 1997).

It is undisputed that the officers did not announce their intention to arrest defendant. It is equally obvious, from the videotape and the testimony of the officers, that defendant, from the moment he arrived at the parking lot, threatened Hering. Defendant nearly struck Hering's patrol vehicle, and he screamed, yelled obscenities, and charged at the officer. Defendant also said that he was not going to allow his child to be taken.

Defendant's argument that the failure to announce in this case invalidated the legitimacy of the arrest, and somehow

11

therefore nullified the resisting arrest charge, lacks merit. Although the officers had no intent to arrest defendant when they arrived at his home, defendant's behavior posed a threat to the officers' safety and the safety of others, and thus made his arrest a necessity.[1]

In State v. Brown, 205 N.J. 133 (2011), the Court considered a similar scenario in which, although the police initially had no authority to arrest the defendant, the defendant's behavior in a public place, like the parking lot here, made their warrantless arrest lawful. Only when defendant charged at Hering, lost control of his temper, and became threatening, was probable cause to make a lawful arrest established. Defendant was threatening to the officers, and his behavior posed a threat to others in the parking lot as well. Defendant was also obstructing the administration of justice, itself a crime. As defendant said, he was willing to die in order to prevent them from fulfilling their duties.

In Brown, the officers arrived at the defendant's girlfriend's apartment to arrest him, but their warrants were invalid. Brown, supra, 205 N.J. at 146-47. Defendant had received a warning phone call from his mother, and fled through a rear

---

[1] We do not address defendant's point that the jury's verdict was fatally inconsistent. That they did not find an assault was not inconsistent with finding that defendant resisted arrest.

window.  Ibid.  While on a rooftop, he engaged in a twenty-minute standoff with police.  Ibid.  The Court found that even though the arrest warrants were invalid, the defendant's conduct made their legality inconsequential.  Id. at 147.  In similar fashion, in this case, defendant's behavior was so threatening from the moment he left his vehicle that the officers had no alternative, once he did not respond to their efforts to calm him down, but to arrest him.

N.J.S.A. 2C:29-1(a) makes it an offense for a person to "prevent[] or attempt[] to prevent a public servant from lawfully performing an official function by means of . . . intimidation . . . or physical interference or obstacle."  Once defendant behaved in this fashion, there was no need for the officers to announce their intent to arrest.  In other words, defendant's own conduct converted what should have been a difficult but peaceful piece of police business to a potentially violent physical confrontation.  The arrest was lawful, and thus there was no necessity for the officers to announce their intention.

We are satisfied that a reasonable jury, having heard the testimony and seen the video, could find guilt beyond a reasonable doubt.

An improper jury instruction that tends to "confuse or mislead the jury" may require reversal of the verdict. Wade v. Kessler Inst., 343 N.J. Super. 338, 345 (App. Div. 2001). However, the trial judge's resisting arrest charge was not improper, it accurately explained the law, and there is no evidence that it confused the jury.

The trial judge, virtually word-for-word, instructed the jury in accordance with the Model Jury Charge for resisting arrest. See Model Jury Charge (Criminal), "Resisting Arrest" (2007). The only significant deviation from the model charge was the judge's explanation of the different requirements for resistance to an unlawful arrest versus a lawful arrest. The judge had explained these differences to the jury throughout the trial in addition to this final charge. The judge's explanation was correct in the law. See Kane, supra, 303 N.J. Super. at 182; Branch, supra, 301 N.J. Super. at 321.

Shortly after beginning deliberations, the jury asked to see the video of defendant's arrest. It later sent out a note requesting the definition of lawful versus unlawful arrest in writing. In response, the judge said:

> First of all I've indicated to you I want you
> to consider the jury instructions in their
> entirety, okay? So I wouldn't send you in

just something that contained a brief portion
of what I instructed you.

But the ultimate issue as to whether or not
the arrest was lawful or unlawful is for you
to determine as the finders of the facts.  All
right?

So that's my response to your note.

In this case, whether defendant's arrest was lawful or
unlawful was pivotal.  The judge stressed that defendant had to
know that "he was being arrested and he, nevertheless, resisted.
The lack of an announcement that defendant was being placed under
arrest, however, could be considered by you if you choose to do
so in evaluating or determining defendant's guilt."

The judge's response to the juror question was appropriate.
The circumstances in this case left little room for doubt regarding
the necessity of the arrest in order to protect persons at the
scene from defendant's anger.  The distinction between lawful and
unlawful arrest was basically and properly left to the jury's
determination as the finders of fact.

No objection was made to the judge's three instructions
regarding the need for a warning if the arrest was unlawful, that
no warning was necessary if the arrest was lawful, and the fact
the jury had to decide guilt accordingly.  In the absence of an
objection, we presume instructions are proper and they will not
be disturbed except upon a finding of plain error.  R. 2:10-2;

State v. O'Caroll, 385 N.J. Super. 211, 235 (App. Div.), certif. denied, 188 N.J. 489 (2006). Trial counsel agreed with the jury instructions on resisting arrest, and given the circumstances that resulted in this indictment, we do not see how the judge's instruction possessed the clear capacity to bring about an unjust result.

IV.

Finally, defendant contends that the court should have instructed the jury regarding the justification defense to the resisting arrest charge. By telling the judge during the charge conference that he was "not suggesting you should charge justification," defense counsel not only acceded to the judge's decision not to charge justification, but agreed with it. See Brett v. Great Am. Rec., 144 N.J. 479, 503 (1996) ("The doctrine of invited error operates to bar a disappointed litigant from arguing on appeal that an adverse decision below was the product of error, when that party urged the lower court to adopt the proposition now alleged to be error.").

It is clear that N.J.S.A. 2C:3-4 allows a person to use force in resisting an arrest when "the actor reasonably believes such force is immediately necessary for the purpose of protecting himself," and the officer is using unlawful force to effect the arrest. The judge concluded that there were no facts in the record

16

which justified instructing the jury about justification, and we agree. Although a trial judge must provide jury instructions on alternate defense theories where supported by even "very slight evidence[,]" State v. Singleton, 418 N.J. Super. 177, 203 (App. Div. 2011), no such evidence existed here. The videotape and the officers' testimony made clear that force was necessary to subdue defendant because he was so enraged about the TRO that he told the officers they would have to kill him in order to take away his child. Nothing in the record indicated that the officers used unlawful force, and thus there was no basis for the judge to give the justification defense.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION