NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3872-15T3

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

ADOLPHUS FOSTER,

 Defendant-Appellant.

_______________________________________________

 Submitted May 16, 2017 – Decided August 16, 2017

 Before Judges Espinosa and Suter.

 On appeal from Superior Court of New Jersey,
 Law Division, Gloucester County, Indictment
 No. 14-05-0530.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Laura B. Lasota, Assistant
 Deputy Public Defender, of counsel and on the
 brief).

 Sean F. Dalton, Gloucester County Prosecutor,
 attorney for respondent (Vanessa Craveiro,
 Assistant Prosecutor, on the brief).

PER CURIAM
 Defendant was convicted in a bench trial of third-degree

aggravated assault and sentenced to a discretionary extended term

as a persistent offender. He presents the following arguments for

our consideration in his appeal:

 POINT I

 THE COURT BELOW ERRED IN DENYING FOSTER'S
 MOTION FOR JUDGMENT OF ACQUITTAL ON THE THIRD-
 DEGREE AGGRAVATED ASSAULT CHARGE AS THE STATE
 DID NOT PROVE BEYOND A REASONABLE DOUBT THAT
 [E.L.] SUFFERED FROM A SIGNIFICANT BODILY
 INJURY.

 POINT II

 THE TRIAL COURT FAILED TO CONSIDER THE LESSER-
 INCLUDED OFFENSE OF SIMPLE ASSAULT. (Not
 raised below)

 POINT III

 FOSTER'S SENTENCE IS MANIFESTLY EXCESSIVE AND
 MUST BE REDUCED.

 We are not persuaded by any of these arguments and affirm

defendant's conviction and sentence.

 I.

 The evidence presented at trial can be summarized as follows:

 The victim, E.L.,1 and defendant were married in 2000 and

divorced within two years. They resumed seeing each other in

1
 We used initials to protect the privacy of the victim.

 2 A-3872-15T3
September 2012. The event that gave rise to the charge here

occurred on September 21, 2013.

 E.L. described the events of that evening as follows. She

and defendant visited his sister that evening. She became

uncomfortable when an argument with his sister was "getting a

little heated." She told everyone she was leaving in five minutes

and would be sitting in the car. Defendant, who had been drinking,

came out to the car and said, "You're not f'ing leaving. Don’t

you leave." She replied, "I am leaving," and left for home alone.

 When she was at home, in bed, "there was . . . a strong

knocking on the back door." She went to unlock and open the door.

She said, "I didn’t even have a chance to fully open the door all

the way when [defendant] busted through and immediately began

beating me in my face." Defendant punched her "immediately" in

her left eye, "multiple times" that she "couldn’t even count," and

punched her "up around [her] head as well." She "dropped

down, . . . screaming, crying," trying to fight back and then got

up and "was able to just barely get out the back door." Defendant

"came immediately behind [her], grabbed [her] by the back of [her]

hair and pulled [her] down on the ground, and physically drug

[sic] [her] from" the back porch inside the house. Defendant then

shut the door and "beat [her] some more," "punching [her] all

over, specifically in [her] head and [her] face." Then, defendant

 3 A-3872-15T3
dragged her into the bedroom, got on top of her on the bed and put

"both of his hands around [her] throat using force to stop [her]

from breathing," strangling her.

 During the assault, which lasted for approximately one hour,

defendant told her "he was going to kill [her]." The assault

finally ended after defendant's sister, daughter and daughter's

boyfriend came into the house, screaming at him to stop. After

the assault, her "head became numb," she "couldn’t focus, . . .

couldn’t think." Her ears were ringing and her eye was bleeding.

 E.L. also stated defendant prevented her from leaving the

house. She asked his daughter to call 911 and go. Defendant took

E.L.'s cell phone and the keys to her car and left. E.L. used

another set of keys to drive and met up with defendant's daughter

and her boyfriend down the street. The police arrived there as

well. She then went to the police department, where the officers

took photographs of her injuries.

 Two days later, E.L. sought medical attention at Underwood

Memorial Hospital, where she had a CT scan. She could not see out

of her left eye, which had "pretty much swollen shut" and "oozing."

She also had cuts on the outside of her eye. She was out of work

for two weeks. When her vision returned after three days, she

"had a blurry vision in it." She was instructed by a plastic

surgeon that she should not blow her nose "for at least a month

 4 A-3872-15T3
because her sinus cavity was broke[n] and the air was going into

[her] eye." She testified she had permanent nerve damage and that

her face was numb "straight down the center of [her] nose to [her]

upper lip, all the way across and up to the bottom of [her] eye."

 Ross Titton, M.D., a board certified radiologist, reviewed

E.L.'s CT scan. He testified that he observed subcutaneous

emphysema in the left preseptal and periorbital region. He

explained this usually means there has been blunt trauma of some

sort and that the most common cause is a fracture. Dr. Titton

observed two definite fractures and a third "very likely" fracture.

The first was in the medial wall of the left orbit of the eye; the

second was a fracture of the floor of the orbit. The third

"probable" fracture was "along the lateral wall of the left

maxillary sinus." Dr. Titton also testified he could "tell with

a very high degree of certainty" that the facial fractures occurred

within the last few days before the CT scan.

 Defendant's account differed from E.L.'s. He testified E.L.

was drunk on the night of the incident. When he went to E.L.'s

house that evening, he did not know where his key was. He banged

on the door and then kicked it; the door flew open and hit E.L.

He said E.L. came at him and they got into a fight because "she

was pissed because I accidentally hit her with the door." He

stated the argument was verbal until E.L. jumped on him. Defendant

 5 A-3872-15T3
stated he then "grabbed her, pushed her" and "pushed her over the

dog kennel by accident." E.L. continued to come at him and he

"smacked her, whatever, pushed her away just to get her away from

[him]." He said the incident lasted between five and seven

minutes.

 II.

 In Point I, defendant argues the trial judge erred in denying

his motion for a judgment of acquittal because, he contends, the

State failed to establish that the victim's injuries rose to the

level of significant bodily injury. We disagree.

 We review the trial court's denial of the motion for judgment

of acquittal de novo, State v. Dekowski, 218 N.J. 596, 608 (2014),

and conduct an independent assessment of the evidence, applying

the same standard as the trial court, see State v. Williams, 218

N.J. 576, 593-94 (2014). A motion for judgment of acquittal is

governed by Rule 3:18-1, which states in pertinent part:

 At the close of the State's case or after the
 evidence of all parties has been closed, the
 court shall, on defendant's motion or its own
 initiative, order the entry of a judgment of
 acquittal of one or more offenses charged in
 the indictment or accusation if the evidence
 is insufficient to warrant a conviction.

 The well-established standard applicable to deciding such a

motion was set forth in State v. Reyes, 50 N.J. 454, 458-59 (1967):

 6 A-3872-15T3
 [T]he broad test for determination of such an
 application is whether the evidence at that
 point is sufficient to warrant a conviction
 of the charge involved. R.R. 3:7-6. More
 specifically, the question the trial judge
 must determine is whether, viewing the State's
 evidence in its entirety, be that evidence
 direct or circumstantial, and giving the State
 the benefit of all its favorable testimony as
 well as all of the favorable inferences which
 reasonably could be drawn therefrom, a
 reasonable jury could find guilt of the charge
 beyond a reasonable doubt.

 Defendant was convicted of third-degree aggravated assault,

N.J.S.A. 2C:12-1(b)(7), which requires proof of the following

elements beyond a reasonable doubt:

 1. That the defendant caused significant
 bodily injury to another; and

 2. That the defendant acted purposely or
 knowingly or acted recklessly under
 circumstances manifesting extreme
 indifference to the value of human life.

 [Model Jury Charge (Criminal), "Aggravated
 Assault – Significant Bodily Injury" (2012).]

 Defendant contends the evidence was insufficient to prove

that E.L. suffered a significant bodily injury. The Model Jury

Charge provides the following instruction to define "significant

bodily injury":

 Significant bodily injury means bodily injury
 which creates a temporary loss of the function
 of any bodily member or organ or temporary
 loss of any one of the five senses. As you
 know, the five senses are sight, hearing,
 taste, touch and smell.

 7 A-3872-15T3
 [Ibid.]

 E.L. testified that she could not see out of her left eye for

three days. Applying the Reyes standard, there was plainly

sufficient evidence to support a finding that she suffered a

temporary loss of one of the five senses, allowing a factfinder

to find defendant guilty on this charge.

 III.

 Defendant next alleges the trial judge committed plain error

in failing to consider the lesser included offense of simple

assault. This argument lacks sufficient merit to warrant

discussion, see R. 2:11-3(e)(2), beyond the following limited

comments.

 N.J.S.A. 2C:1-8(d) states an offense is a lesser-included

offense when:

 (1) It is established by proof of the same or
 less than all the facts required to establish
 the commission of the offense charged; or

 (2) It consists of an attempt or conspiracy
 to commit the offense charged or to commit an
 offense otherwise included therein; or

 (3) It differs from the offense charged only
 in the respect that a less serious injury or
 risk of injury to the same person, property
 or public interest or a lesser kind of
 culpability suffices to establish its
 commission.

 8 A-3872-15T3
 In State v. Cagno, 211 N.J. 488 (2012), cert. denied, 568

U.S. 1104, 133 S. Ct. 877, 184 L. Ed. 2d 687 (2013), the Supreme

Court described the two-part test applicable under this statute:

 For a trial court to charge a jury on an
 unindicted offense, the court must conclude
 not only that the offense is included in the
 charged offense but also that the evidence at
 trial presents a rational basis for the jury
 to acquit the defendant of the greater offense
 and convict him or her of the lesser.

 [Id. at 521 (quoting State v. Brent, 137 N.J.
 107, 123 (1994)).]

 Because the evidence here did not provide a rational basis

for the court to acquit defendant of the third-degree offense and

convict on simple assault, this argument lacks merit.

 IV.

 Finally, defendant argues the trial court erred in imposing

an excessive sentence, "[g]iven the unexceptional nature of the

offense." After determining defendant qualified for a persistent

offender extended term, see N.J.S.A. 2C:44-3(a), the trial court

found aggravating factors three, six and nine, N.J.S.A. 2C:44-

1(a)(3), (6) and (9), and no mitigating factors. The court

sentenced defendant to eight years with a four-year period of

parole ineligibility.

 9 A-3872-15T3
 We review sentencing determinations in accordance with a

deferential standard. State v. O'Donnell, 117 N.J. 210, 215

(1989).

 The appellate court must affirm the sentence
 unless (1) the sentencing guidelines were
 violated; (2) the aggravating and mitigating
 factors found by the sentencing court were not
 based upon competent and credible evidence in
 the record; or (3) "the application of the
 guidelines to the facts of [the] case makes
 the sentence clearly unreasonable so as to
 shock the judicial conscience."

 [State v. Fuentes, 217 N.J. 57, 70 (2014)
 (alteration in original) (quoting State v.
 Roth, 95 N.J. 334, 364-65 (1984)).]

 Defendant does not challenge the trial court's findings

regarding aggravating and mitigating factors but argues the

aggravating factors found and the court's rationale do not justify

the sentence imposed. He concedes his record qualifies him for

the imposition of a discretionary extended term but contends the

extended term was not properly imposed because the judge engaged

in improper double-counting. He argues further that the court

"appeared to be under the misbelief that it was required to

sentence [defendant] within the second-degree range because it

found that the discretionary-extended term was applicable." Our

review of the record does not corroborate defendant's

characterization of the trial court's reasoning. We find no basis

for disturbing the sentence that was imposed.

 10 A-3872-15T3
Affirmed.

 11 A-3872-15T3