STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. DONALD HUTSON, DEFENDANT-RESPONDENT.

Argued March 16, 1987—Decided June 11, 1987.

*Greta-Ann Gooden,* Deputy Attorney General, argued the cause for appellant (*W. Cary Edwards,* Attorney General of New Jersey, attorney).

*John R. Grele,* Assistant Deputy Public Defender, argued the cause for respondent (*Alfred A. Slocum,* Public Defender, attorney).

PER CURIAM.

Defendant was convicted, after a jury trial, of first degree robbery in violation of *N.J.S.A.* 2C:15–1, and of possession of a controlled dangerous substance, diazepan, contrary to *N.J.S.A.* 24:21–20. The Appellate Division upheld the drug-possession conviction but vacated the conviction for first degree robbery. The court below remanded for correction of the judgment to show a conviction for second degree robbery, and it ordered that defendant be resentenced on that conviction. *State v. Hutson,* 211 *N.J.Super.* 49, 53 (1986). We granted the State's petition for certification, 107 *N.J.* 222 (1986), to review the vacating of the first degree robbery conviction. Although we do not agree with all of the reasoning of the court below, we nevertheless affirm the judgment.

I

At about 1:00 a.m. on April 18, 1984, at Penn Station in Newark defendant, Donald Hutson, and his friend Gordon Sheppard hailed a taxicab driven by one Hull Pierre-Louis. They asked to be taken to an address on Bergen Street, Newark. The driver testified that as they approached the

destination, one of the passengers—Pierre-Louis could not distinguish between them—said that "they want[ed] some money." When the driver responded that he had no money, one of the passengers knocked on the partition between the front and rear seats and repeated their demand. Believing his passengers to be "playing around," Pierre-Louis paid little heed to their request until one of them said he had a gun, which the other passenger described as "a Magnum." The driver then testified that

> [a]t this time I look in the back, they had a little newspaper and I started driving fast with no stop.

We pause to observe that, as will be seen, the reference to a newspaper assumes some importance. The foregoing excerpt from the transcript contains the only mention of a newspaper in Pierre-Louis's direct examination. Likewise on the driver's cross-examination there was but a single isolated allusion to a newspaper:

> Q. You can't tell this jury which one of the men was holding a newspaper, can you?
> A. No.
> Q. And you don't know which of the men asked you for the money?
> A. Both of them asked me for money.

The passengers' announcement about a gun shed a different light on things for the victim, for as he testified:

> Q. When he said they had a gun, a Magnum, what did that mean to you?
> A. That's when they mean business. If I stop, they going to shoot, but if I keep driving fast in the cab, they're not going to shoot.
> Q. What did you do then?
> A. I keep driving fast, blew my horn, drive fast with no stop. Even red lights there, I no stop.
> Q. You put your high beams on, is that correct?
> A. The high beam, yes.
> Q. And what else did you do, blow your horn?
> A. Yes.

The driver's intention was two-fold: to attract attention, and to discourage his passengers from firing at him, the theory being that fear of the consequences of a driverless cab careening down a main artery might make them think twice about disabl-

ing the operator. At one point Pierre-Louis stopped to avoid a truck, whereupon Sheppard jumped out but Hutson remained in the cab.

The driver made his way at high speed to the employee entrance of the Post Office at Mulberry and Franklin Streets, where he anticipated—correctly—that postal security officers would be on duty. One of them summoned the police, and in due course defendant was arrested. A search failed to turn up any weapon, and Pierre-Louis acknowledged that at no point had he seen a weapon. The arresting officer's testimony summarized the victim's report of the events as follows:

Q. Your report that was taken, what did Mr. Pierre-Louis indicate took place?
A. He stated that he had picked up two fares from Penn Station on the West Side and they requested to go to South 12th Street.
Q. And what else did he indicate with reference to South 12th Street?
A. He said on his way to South 12th Street in the area of West Market and Norfolk Street, one of the males stated that he had a gun and he wanted all the money. He told the guy he wasn't giving him the money and the man told him if you don't give me the money, I'm going to shoot. At which time Mr. Hull stated, shoot if you want to and started to drive at a higher rate of speed.

Significantly, the officer's account contains no reference to any newspaper.

At the conclusion of the State's case defendant moved to dismiss so much of the indictment as charged first degree robbery. In denying the motion the trial court emphasized that the victim

indicated he saw a person with a newspaper. He clearly indicated to the Court, I believe, that he thought a weapon was involved. What the Court has to determine, and it doesn't have to be a weapon, it can be a material or substance which is fashioned in a manner that the victim would believe there was a weapon capable of producing death or serious bodily injury. I think he testified to that fact.

The Appellate Division concluded that the evidence was insufficient to permit the first-degree robbery charge to go to the jury. The court held that there must be some tangible object giving rise to a belief by the victim that the defendant is armed with a deadly weapon, and in this case "no such object was

displayed; no such object existed." 211 *N.J.Super.* at 53. The court determined that

> [t]he driver's belief that a gun was under the newspaper neither converted the paper into a weapon nor eliminated the need for the existence of *some* object. Construing the criminal statute narrowly, as we must, we find error in the trial judge's conclusion that a victim's subjective belief is enough to satisfy a showing of a deadly weapon. [*Ibid.*]

The foregoing language at the heart of the Appellate Division opinion is the source of the controversy before us.

## II

Robbery is a crime of the first degree if "in the course of committing [a] theft the actor * * * is armed with, or uses or threatens the immediate use of a deadly weapon." *N.J.S.A.* 2C:15–1b. Although this language is susceptible of different interpretations, this Court has held that first degree robbery requires more than a threat; the actor must actually possess a deadly weapon during commission of the offense. *State v. Butler*, 89 *N.J.* 220, 228 (1982).

The question in *Butler* was whether a defendant could be convicted of first degree robbery "if he committed the offense by pretending to be carrying a handgun when, in fact, he was unarmed." *Id.* at 222. In holding that the actual possession of a deadly weapon is a necessary ingredient of the offense, the Court referred to an amendment to *N.J.S.A.* 2C:11–1c, *L.*1981, *c.* 384, effective after Butler's offense, that expanded the definition of "deadly weapon" to include the language italicized below:

> "Deadly weapon" means any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury or *which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury.* [Emphasis added.]

It is this amended definition, of course, that applies in this case; and the question thus becomes whether there was sufficient evidence in this case to permit the conclusion that defendant in

fact possessed a deadly weapon as defined in the amended statute.

The portions of the statutory definition of a "deadly weapon" relevant to this appeal can be parsed into two elements. First, defendant must use a "firearm or other weapon, device, instrument, material or substance;" second, the manner in which that item is fashioned must lead the victim reasonably to believe it capable of producing death or serious bodily injury.

With regard to the first element, as the Appellate Division observed, there must be some tangible object possessed by the defendant that the victim believes to be a deadly weapon. 211 *N.J.Super.* at 52. A threat or reference to a deadly weapon alone is not enough. Conversely, it is not necessary that the device itself be capable of producing death or serious bodily harm: anything that simulates such a weapon will satisfy the definition. *See* Assembly Committee Statement to Senate Bill 1511 (1981), which became codified in *N.J.S.A.* 2C:11–1 (objects such as toy guns included in definition).

The statutory language regarding the nature of the object that would meet the definition is encompassing indeed: it includes any "device, instrument, material or substance." In *State v. Cooper*, 140 *N.J.Super.* 28, 32 (Law Div.1976), rev'd on other grounds, 165 *N.J.Super.* 57 (App.Div.), certif. denied, 81 *N.J.* 56 (1979), the court considered an earlier law that proscribed armed robbery with

any object or device, whether toy or imitation, having an appearance similar to or capable of being mistaken for any of the foregoing. [*L.*1959, *c.* 148 § 1.]

Unlike the statute in *Cooper*, *N.J.S.A.* 2C:11–1c requires (a) that the victim have a subjective belief that the device or instrument be "capable of producing death or serious bodily injury," and (b) that that subjective belief be a reasonable one under the circumstances. Putting that difference aside, and recognizing that the earlier statute used the term "object" whereas the one before us refers to "device, instrument, material or substance," we focus on the *Cooper* court's construction of the term "object." The court in *Cooper* concluded that

"[t]here can be no doubt that a finger is an object, or that when placed in the pocket in shape of a gun and combined with threatening words or gestures, such an object is capable of making a victim believe that defendant was armed." 140 *N.J.Super.* at 34. Under the construction a jury in this case might properly have concluded that the newspaper observed by the victim is an instrument or device that would satisfy the definition of dangerous weapon *provided* it were fashioned so as to animate the requisite reasonable belief in the victim.

Which brings us to the second element referred to above: the reasonableness of the victim's subjective belief. Although there can be no doubt that Pierre-Louis believed that defendant possessed a gun, the definition requires more than the victim's subjective belief. The statute requires that the object be *fashioned in such a manner* that the victim *reasonably believes* it to be capable of causing serious bodily harm or death. The only evidence in this regard is that the victim, on hearing the threat of a gun, turned and saw a newspaper. Contrary to the view of the trial court, contrary to the assertion of the State in its petition for certification that defendant was "holding a newspaper in such a manner as to convey the impression that it concealed the gun," and contrary to the Appellate Division's recital of the "driver's belief that a gun was under the newspaper," 211 *N.J.Super.* at 53—contrary to all of these, there was simply no evidence whatsoever to suggest that the newspaper was fashioned or held in such a manner as to create *any* impression on the victim. No sensible reading of the testimony of the driver and the police officer, set forth *supra* at 224, can sustain any other conclusion. And if there be any lingering doubt on this score, we need but turn to the assistant prosecutor's summation to the jury: it takes up ten pages of transcript and may be examined in vain for a single reference to a newspaper or to any other device or instrument envisioned by the statute.

The point is obvious: what is missing in this record is the link between the threat and the object viewed by the victim. Had

the newspaper been presented to the victim so as to create the reasonable impression that it concealed a dangerous object, the definition of dangerous weapon would have been satisfied. Our disagreement with the Appellate Division is narrow, but critical: to the extent that the opinion of the court below may be read to suggest that a newspaper either fashioned to look like a weapon or held in such a manner as reasonably to lead a victim to believe that it concealed a weapon would not satisfy the statutory requirement of a deadly weapon, it is incorrect. Such evidence, had it surfaced in this case, would indeed have met the statutory definition; but the record as it stands does not generate an inference that defendant had created the reasonable impression that he was concealing a weapon under a newspaper.

Other states construing similar language have concluded that it is the reasonable impression created by that which is presented to the victim that is controlling. So in *State v. Hopson*, 122 *Wis.*2d 395, 362 *N.W.*2d 166 (Ct.App.1984), the court construed statutory language that proscribed robbery with "any article used or fashioned in a manner to lead the victim reasonably to believe that it is a dangerous weapon." The court upheld the conviction of a defendant who told the victim "I have a gun," and then reached under his shirt in which there were several bulges but no weapon. *Id.* at 398, 362 *N.W.*2d at 167. The court concluded that the language

"should be construed to focus upon the reasonable perception of the victim that he or she was in danger and not upon the defendant's possession or display of dangerous weapons or other dangerous-appearing articles." [*Id.* at 401–02, 362 *N.W.*2d at 169.]

Likewise, under a Michigan statute similar to our own, a conviction was upheld where defendant placed his hand under his shirt and positioned it so as to create the reasonable impression that he was armed. *People v. Grihm*, 148 *Mich. App.* 285, 383 *N.W.*2d 631 (Ct.App.1986); *see also Breedlove v. State*, 482 *So.*2d 1277 (Ala.Crim.App.1985) (armed robbery conviction upheld where defendant, a passenger, stuck "some-

thing" into cab driver's ribs; statute proscribed "article used or fashioned in a manner to lead any person * * * reasonably to believe it to be a deadly weapon * * *."). From these cases we extract the principle that the victim need not actually see the object, so long as there is some device used by the defendant that is fashioned to create in the victim the reasonable sensory impression that the object is capable of causing serious bodily harm or death. To be sure, a newspaper could be so fashioned as to imply either that it conceals such a weapon or is itself such a weapon, and thereby satisfy the definition; but the proofs in this case do not come close to meeting the statutory requirement. The record simply does not allow a finding beyond a reasonable doubt that defendant possessed a deadly weapon as defined in *N.J.S.A.* 2C:11–1c.

Judgment affirmed. The cause is remanded to the Law Division for correction of the conviction to second degree robbery and for appropriate sentencing.

*For affirmance and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For reversal*—None.