292 N.J. Super. 185 (1996)
678 A.2d 731
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RICKY L. HUFF, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 12, 1996.
Decided July 12, 1996.
*187 Before Judges KING, LANDAU and KLEINER.
Lon Taylor, Assistant Deputy Public Defender, argued the cause for appellant (Susan L. Reisner, Public Defender, attorney; Mr. Taylor, of counsel and on the brief).
Annmarie Cozzi, Special Deputy Attorney General, Acting Assistant Prosecutor, argued the cause for respondent (Charles R. Buckley, Deputy Attorney General, Acting Bergen County Prosecutor, attorney; Ms. Cozzi, of counsel and on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
Defendant Ricky L. Huff was found guilty of first-degree robbery (N.J.S.A. 2C:15-1) and third-degree theft by receipt of stolen property (N.J.S.A. 2C:20-7), following jury trial in Bergen County. After merger of the theft count into the robbery count, defendant was sentenced to the presumptive term of fifteen years, and a $500 fine was imposed along with VCCB and Safe Neighborhood penalties aggregating to $100 and $150 respectively.[1]
On appeal defendant raises the following arguments:
POINT I
THE TRIAL COURT IMPROPERLY DENIED DEFENDANT'S MOTION TO DISMISS THE ARMED ROBBERY CHARGE SINCE THERE WAS NO EVIDENCE TO SUPPORT A CONVICTION FOR ARMED ROBBERY, THEREBY DENYING DEFENDANT DUE PROCESS OF LAW AND A FAIR TRIAL.
POINT II
THE PROSECUTOR'S EXCLUSION OF THE ONLY BLACK JUROR THAT WAS QUALIFIED BY THE COURT FOR SERVICE ON MR. HUFF'S JURY DENIED DEFENDANT HIS RIGHTS TO EQUAL PROTECTION AND A FAIR AND IMPARTIAL TRIAL.

*188 POINT III

THE TOTAL OMISSION OF A JURY INSTRUCTION REGARDING IDENTIFICATION DENIED DEFENDANT DUE PROCESS OF LAW AND A FAIR TRIAL. (Not Raised Below)
POINT IV
THE IMPOSITION OF A PRESUMPTIVE FIFTEEN YEAR SENTENCE OF IMPRISONMENT, IN LIGHT OF THE MINIMAL NATURE OF THE OFFENSE AND THE COURT'S BELIEF THAT NO GUN WAS INVOLVED, WAS EXCESSIVE.
We are satisfied that each of the arguments is without merit and affirm.
The charges against defendant arose out of a late night robbery of a lone cashier at a 7-Eleven store in New Milford on December 16, 1993.
According to the cashier, the robber bought a bag of Doritos after inquiring about directions to Hillsdale. She described the robber as a black male, about 200 pounds and six feet tall, with a mustache and close-cropped hair, wearing a dark stadium coat and a dark shirt. The robber said, "You have a family. I have a family. So you understand." He then patted his waist in a manner described and demonstrated to the jury by the victim, saying, "I have a gun here." He demanded money and the cashier gave him the contents of the cash drawer. A customer who entered the store saw the robber as he was leaving. Upon being told that the man "took all the money," the customer looked out the window and observed him enter an older model car, then drive out of the lot with headlights off.
Defendant was apprehended about two hours after the robbery based upon the description that the victim furnished to police. The capture occurred after defendant stopped at a Tenafly gas station, asking for directions to Hillsdale and complaining of car trouble. He aroused suspicions sufficient for the owner's brother, Christopher Reilly, to request that a police officer come to the station.
Reilly volunteered to lead defendant to Hillsdale, but the officer decided to follow, noting that defendant was driving without headlights. The officer stopped defendant's car, and noticed him *189 eating Doritos. As defendant could not produce a license or registration, the officer returned to the patrol car to check the vehicle registration. Recalling a previous radio transmission about the 7-Eleven robbery, he also asked for a description of the perpetrator, which matched that of the defendant. Defendant was then placed under arrest.
Later that morning, he was identified by the cashier-victim from a photographic array prepared by police. While at the police station, she inadvertently entered a room where defendant was being detained. After defendant saw her, he volunteered to an officer, "Now I'm in real trouble ... [n]ow she can identify me," a statement that confirmed that he knew who the cashier was.
When apprehended, defendant possessed $597 in small denominations, among which were fifty-four one-dollar bills and forty-six five-dollar bills.

The First-Degree Robbery Conviction
Defendant urges that, even if he was found guilty of robbery, his motion to dismiss the charge of first-degree robbery was improperly denied.
N.J.S.A. 2C:15-1 provides in pertinent part: "Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor ... is armed with, or uses or threatens the immediate use of a deadly weapon."
Shortly before the decision in State v. Butler, 89 N.J. 220, 445 A.2d 399 (1982), the Legislature amended the definition of "deadly weapon" contained in N.J.S.A. 2C:11-1(c) to read:
"Deadly weapon" means any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury or which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury.
As explained by the Court:
We think it obvious that the Legislature's initiative in this regard indicated its desire to broaden the definition previously existing for the term "deadly weapon."

*190 ....
Of course, the Legislature has the power, now exercised through the recent amendment to N.J.S.A. 2C:11-1(c) ... to provide the same sanction for a robbery committed by simulating the use of a weapon as for one perpetrated with an actual firearm.
[Butler, supra, 89 N.J. at 229 n. 3, 231 n. 4, 445 A.2d 399.]
Later, in State v. Hutson, 107 N.J. 222, 526 A.2d 687 (1987), the Court recognized that the statutory definition of "deadly weapon" would be satisfied if the defendant (1) possessed a tangible object (i.e., "device, instrument, material or substance"), and (2) it was reasonable for the victim to believe it to be capable of causing serious bodily harm or death. Id. at 227, 526 A.2d 687. The evidence in Hutson did not provide the basis for such a reasonable impression ("there was simply no evidence whatsoever to suggest that the [rolled] newspaper was fashioned or held in such a manner as to create any impression on the victim"), even though one of the robbers said he had a gun. Id. at 228, 526 A.2d 687. The Court recognized, however, that unlike the statute it considered in Butler, under the amended statute a first-degree robbery charge can be sustained even if a real gun is not employed.
This was again emphasized in State v. LaFrance, 117 N.J. 583, 569 A.2d 1308 (1990). There, a first-degree robbery conviction was sustained where the robber simulated a gun by placing his hand in his pocket under circumstances in which it was reasonable to believe that he had a concealed gun. Id. at 595, 569 A.2d 1308.
Similarly here, it was reasonable for the cashier to accept defendant's simulation of possession of a gun by patting his waist, covered by a loose fitting stadium coat, proclaiming "I have a gun here," as he demanded the money in the cash register.
The jury was carefully charged on the issue, both in the formal charge, and in response to several jury questions.
Answering one jury question, the judge instructed the jury, in part, that in order to find defendant guilty of a first-degree robbery,

*191 the Defendant must use a firearm or other weapon, device, instrument, material or substance, and the manner in which that item is fashioned must lead the victim reasonabl[y] to believe it capable of producing death or serious bodily injury.
The victim need not see the device or instrument so long as there is some device used by the defendant that is fashioned to create in the victim the reasonable sensory impression that the object is capable of causing serious harm or death.
The record discloses that the victim testified and indicated by physical demonstration what the defendant did when he said he had a gun and asked for the money. On cross examination, the victim testified that defendant patted his waist, and also that "he put his hand in and patted his waist." Then she answered the judge's question, "Did you say he put his hand in?", saying, "No. He patted. Like this. (Witness Indicates.)." Then, in answer to the judge's question, "Was it on the outside of his jacket?", she answered, "No. It's like the jacket was opened that night and he just patted it like this. (Witness Indicates.)."
In summation, the prosecutor argued to the jury that "the object this man used was this coat, coupled with his hand underneath it by saying I have a weapon. I have a gun."
It was objectively reasonable for the victim to have believed defendant's simulation of a concealed gun.
We note further that the judge also charged the jury that "it is alleged that defendant made certain oral statements. It is your function to decide whether or not any of those statements were actually made by the Defendant and if made whether such statement or any portion thereof is credible." He charged further that the jury could take into consideration circumstances and facts surrounding the giving of the statement in determining whether defendant's statement was credible.
This charge points up a second dimension of defendant's statement that he had a gun. While not critical to our previous analysis, we think that statement could properly have been received not only to show that the victim reasonably believed *192 defendant's simulation, but, under N.J.R.E. 803(b),[2] for its truth as well. While no gun was recovered, we see no reason why the jury could not have accepted defendant's entirely unrebutted statement at face value if they believed it was made.

The Gilmore Issue
Defendant, who is black, argues that the State's exercise of one of its peremptory challenges to excuse the only remaining black juror in the venire violated his rights to equal protection of the law and to a fair and impartial trial as set forth in State v. Gilmore, 103 N.J. 508, 511 A.2d 1150 (1986). The prosecutor had previously used about seven peremptory challenges,[3] excluding only white jurors. Several other black jurors had been excused by the judge for various reasons.
Citing United States v. Clemons, 843 F.2d 741 (3d Cir.), cert. denied, 488 U.S. 835, 109 S.Ct. 97, 102 L.Ed.2d 73 (1988), defendant says that a prima facie case of discrimination was made out because one hundred percent of the black venire persons were excluded by the State. We question defendant's broad interpretation of the Clemons holding, as the case cited in Clemons respecting exclusion of a single black juror did not discuss prima facie showings, but merely confirmed that exclusion of even one black juror for a racial reason constitutes an equal protection violation. See United States v. Gordon, 817 F.2d 1538, 1541 (11th Cir.1987), *193 cert. dismissed, 487 U.S. 1265, 109 S.Ct. 28, 101 L.Ed.2d 979 (1988).
The jury selection circumstances in this case are similar to those in State v. Bey, 129 N.J. 557, 584, 610 A.2d 814 (1992), in which six of seven black venire persons had been excused for cause, and the State exercised a peremptory challenge excusing the remaining black person. The prosecutor had used five peremptory challenges in total, four to excuse persons who were not black. Id. at 585, 610 A.2d 814. No prima facie showing of discrimination was found in Bey, and we find none here.
We have, nonetheless, considered the reasons provided by the prosecutor for excusing the black juror. The trial judge had refused a specific request to ask the juror about his disability, the nature of which apparently was, and is, not clear. The judge thought that the juror's negative answer to a general question posed to all jurors, "Do you have any physical impairment which would prevent you from serving as a juror in this case?", was sufficient. The prosecutor reasonably could have declined to gamble on that subjective negative answer without the desired amplification. Moreover, the prosecutor also articulated his concern that the juror had avoided making eye-contact with him during the voir dire, a frequent indicator of prospective adverse reaction.
As in Bey, the requisite prima facie showing of discrimination was here lacking. In any event, a reasonable non-discriminatory basis for the challenge was established. See Gilmore, supra, 103 N.J. at 538-39, 511 A.2d 1150.

The Remaining Issues
The remaining issues raised by defendant require little comment. As suggested by counsel's failure to object, the omission of a specific jury instruction on identification evidently was not deemed significant in the context of the trial. See State v. Macon, 57 N.J. 325, 333, 273 A.2d 1 (1971). Absent an error clearly capable of producing an unjust result, we do not consider *194 arguments directed to the jury charge unless objections are made before the jury retires. R. 1:7-2; R. 2:10-2.
We have examined the array of six photographs from which defendant's picture was identified by the victim eight hours after the robbery. It was not unduly suggestive, and surely not such as to create a "`substantive likelihood of irreparable misidentification.'" See State v. Madison, 109 N.J. 223, 232, 536 A.2d 254 (1988) (quoting Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968)). Moreover, much like in State v. Salaam, 225 N.J. Super. 66, 69-72, 541 A.2d 1075 (App.Div. 1988), the circumstantial and direct evidence was strongly corroborative of defendant's guilt, if not overwhelming. There was no plain error in failing to make a sua sponte identification charge in this case.
As to the sentence, a presumptive term of fifteen years was imposed based upon aggravating factors appropriately balanced by the sentencing judge against the likelihood that defendant was not armed and did not intend serious harm. The aggravating factors included a substantial history of arrests and convictions, a prior robbery conviction among them.
Our judicial conscience is not shocked by imposition of the presumptive term of imprisonment. However, we must remand for the limited purpose of modifying the sentence to delete the VCCB and Safe Neighborhood Service Fund assessments improperly imposed under the merged theft count.
The judgment of conviction is in all other respects affirmed.
KLEINER, J.A.D., dissenting.
Although I concur with the majority in its disposition of the points of error raised by defendant referencing State v. Gilmore, 103 N.J. 508, 511 A.2d 1150 (1986), and those issues raised concerning the photographic array provided to the victim eight hours after the robbery, I respectfully conclude that the majority has misconstrued State v. Hutson, 107 N.J. 222, 526 A.2d 687 *195 (1987). I therefore dissent. I would, as in Hutson, vacate defendant's conviction for armed robbery and remand to the Law Division for correction of the judgment of conviction to a second-degree robbery and for resentencing.
Simply stated, a pronouncement by a robber that he is armed, unaccompanied by the display of any object that could reasonably be mistaken by the victim for a deadly weapon, is not sufficient to support a conviction of armed robbery in violation of N.J.S.A. 2C:15-1.
The record here is vague. As noted by the majority:
On cross examination, the victim testified that defendant patted his waist, and also that "he put his hand in and patted his waist." Then she answered the judge's question, "did you say he put his hand in?", saying, "No. He patted. Like this. (Witness Indicates.)." Then, in answer to the judge's question, "Was it on the outside of his jacket?", she answered, "No. It's like the jacket was opened that night and he just patted it like this. (Witness Indicates.)."
Unfortunately, the trial judge failed to specifically articulate the exact movements of the victim that demonstrated to the jury the alleged action of defendant. We are left to guess whether defendant touched his waist underneath his opened coat or touched the outer area of his coat at the waist.
Even had the victim's description been more fully described in the record, and assuming that the victim's description conveys the concept that defendant patted his waistline under an opened coat, that description failed to include any bulge at the waistline or any other device that the victim reasonably could have concluded was a weapon. There exists no evidence that the victim perceived a "device, instrument, material or substance," as required by the statutory definition of deadly weapon under N.J.S.A. 2C:11-1c.
As noted by the Supreme Court in Hutson, "N.J.S.A. 2C:11-1c requires (a) that the victim have a subjective belief that the device or instrument be capable of producing death or serious bodily injury, and (b) that subjective belief be a reasonable one under the circumstances." 107 N.J. at 227, 526 A.2d 687 (emphasis supplied). Although my colleagues conclude, "It was objectively reasonable for the victim to have believed defendant's simulation *196 of a concealed gun," the victim herself never articulated that perception. The only reference to the victim's belief was the prosecutor's argument in summation, "the object this man used was this coat, coupled with his hand underneath it by saying I have a gun." The absence of a "device, instrument, material or substance," required by N.J.S.A. 2C:11-1, warrants a reversal of defendant's conviction. The vague description of defendant's hand movement may not be substituted for the necessary tangible object. See ibid.
My colleagues have also buttressed their decision to affirm by referencing defendant's alleged statement to the victim as a truthful declaration under N.J.R.E. 803(b). Yet my colleagues ignore the similar statement of the defendant in Hutson. Id. at 224, 526 A.2d 687. The statement by the passenger in Hutson that he had a gun, which the other passenger described as a Magnum, was insufficient to convict the defendant even though the driver-victim testified, "[a]t this time I look in the back, they had a little newspaper and I started driving fast with no stop." Ibid. If the newspaper in Hutson was insufficient to sustain a conviction of armed robbery, I must conclude that patting one's waistline underneath an opened coat in the absence of any bulge is also insufficient to sustain defendant's conviction. Defendant is guilty of robbery in the second degree. His conviction for first-degree armed robbery cannot be sustained.
NOTES
[1] As the theft offense was merged into the robbery for sentencing purposes, no separate penalties should have been attributed to that offense.
[2] N.J.R.E. 803 provides in pertinent part:

The following statements are not excluded by the hearsay rule:
(b) Statement by party-opponent. A statement offered against a party which is:
(1) the party's own statement....
....
In a criminal proceeding, the admissibility of a defendant's statement which is offered against the defendant is subject to Rule 104(c).
No N.J.R.E. 104(c) proceeding was here required.
[3] Seven was the figure apparently accepted by the court. The precise count appears uncertain as we read the record, but it was no less than five.